CHARLES W. HENNING AND ANOTHER, RESPONDENTS. *v.* SEYMOUR BENNETT AND ANOTHER, APPELLANTS.

*" The wear of the creek " — it does not include a change made by a freshet — title to the thread of the stream.*

The Cazenovia creek, which divided the lands of Charles W. Henning and John Hughes, was the south-westerly boundary of Henning's lot; the land owned by Hughes being on the opposite side of the creek. At one place the creek made a deep bend southerly and returned, and then ran about in the same direction as before. Both parties held their land under a common source of title, Henning's lot being described as containing twenty-four and seventy one-hundredths acres, "less the wear of the creek."

During a freshet the creek broke through and across the top of the bend, and abandoned its old bed in the loop.

Hughes claimed that the land in the loop belonged to him; that the change should be regarded as "the wear of the creek," and that the new line of the creek determined the boundaries.

In an action of ejectment brought by Henning.

*Held,* that "the wear of the creek" had reference only to gradual and imperceptible changes in the banks of the creek, by which soil might be taken from one side and deposited on the other.

That it had no reference to a violent change in the course of the creek caused by a flood, and that, therefore, the land in the loop continued to belong to Henning.

That where a deed bounded property upon a creek, this carried the title to the center of the creek.

APPEAL by the defendants, Seymour Bennett and John Hughes, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Erie on the 15th day of January, 1891, adjudging the recovery by the plaintiffs of certain real property described in the complaint after a trial at the Erie Circuit before the court, the jury having been discharged.

*Spencer Clinton*, for the appellants.

*E. L. Parker*, for the respondents.

LEWIS, J.:

This is an action of ejectment brought to recover parcels of land situated in the county of Erie.

The plaintiffs and the defendant John Hughes were owners of adjoining lots of land located partly in the city of Buffalo and an adjoining town. The defendant Bennett was a tenant of Hughes and did not answer.

The titles came from the same source, the Ogden Land Company. The plaintiffs' land was known and distinguished on a map and survey of the village tract, so called, made by Mr. James Sperry, as lot 37. The plaintiffs' lot in the various conveyances was described as containing $24\frac{70}{100}$ acres "less the wear of the creek."

The south-westerly boundary of the plaintiffs' lot, as laid out upon Sperry's map, was known as Cazenovia creek as originally surveyed, and this line is described as beginning at the north-west corner of the lot and thence up the creek a number of courses and distances mentioned, and which appeared upon the map, and running along the margin of the stream. The defendant was the owner of lots 270 and 271 upon said map, designated as lying upon the opposite side of the creek from the plaintiff's land.

The land of the parties is low. Cazenovia creek in an ordinary state of water is sluggish, but is subject to severe floods in times of freshet. The general course of the creek in passing through the lands of the parties ran in a north-westerly direction, but at a point in its course through the lands of the parties it made a sudden detour for a distance of some four hundred feet southerly from its general course and then returned northerly about the same distance to a

point opposite the place of its departure, and from thence flowed along in the general line of the stream, leaving a part of the plaintiff's lot, a long narrow strip of land, extending up into this bend of the stream.

In the year 1859, at a time of 'a great freshet, the waters of the stream broke over and across the neck of this narrow strip mentioned and formed a channel through the neck, and thereafter, instead of making the detour mentioned, the waters flowed along the general course of the stream across the neck of this strip of land, and thereby separated this piece of land from the main body of the plaintiff's lot, and hence arose one of the questions presented by this appeal, each of the parties claiming this strip of land.

It being the contention of the defendant that it was lost to the plaintiff by the " wear of the creek ; " the plaintiff contending that the true meaning of the phrase " wear of the creek " had reference to the gradual and imperceptible changes in the banks of the creek by which the soil is taken from one side of the stream and deposited upon the other, and not to a sudden and violent change in the course of the stream by floods.

The plaintiff's theory of the case was adopted by the trial court, and we think correctly. We think the use of the phrase " wear of the creek " had reference to the gradual alteration of the course of the stream, and not to a violent and sudden change of its course as was effected in this case. The western boundary of the plaintiff's lot being upon the creek, and following courses and distances, carried the western line to the center of the creek.

The findings of the trial court were sustained by the evidence. The exceptions of the defendant have been examined, and we find nothing in them justifying a reversal of the judgment.

The judgment should be affirmed.

DWIGHT, P. J., and MACOMBER, J., concurred.

Judgment appealed from affirmed.